IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Jennifer Hart, on behalf of herself and all )
others similarly situated, )
                                            )
                                            )    C.A. No.: 2:17-cv-227-PMD
            Plaintiff, )
                                            )
        v. )                                      **ORDER**
                                            )
Barbeque Integrated, Inc. d/b/a Smokey )
Bones, )
                                            )
            Defendant. )
                                            )

This matter is before the Court on Defendant's motion to dismiss (ECF No. 30) and

Plaintiff's motion for conditional certification (ECF No. 33). For the reasons set forth herein,

Defendant's motion to dismiss is denied and Plaintiff's motion for conditional certification is

granted.

**BACKGROUND**

On January 24, 2017, Plaintiff commenced this action on behalf of herself and all others

similarly situated, seeking unpaid minimum wages pursuant to the Fair Labor Standards Act

("FLSA") and the South Carolina Payment of Wages Act ("SCPWA"). Plaintiff and the putative

class seek recovery from Defendant, who owns and operates sixty-seven restaurants nationwide

known as Smokey Bones.

Plaintiff primarily alleges that Defendant, while taking advantage of the FLSA's tip credit

provision, required her and the putative class members to perform non-tipped side work that *was*

*not* related to their tipped occupations as servers and bartenders, as well as requiring that Plaintiff

and the putative class members spend more than twenty percent of their shifts performing non-

tipped side work that *was* related to their tipped occupations. Additionally, Plaintiff alleges that

she and the putative class members were required to pay Defendant out of their tips when a customer walked out, were required to purchase additional Smokey Bones t-shirts with their tips, and were never notified that Smokey Bones was paying them less than minimum wage pursuant to the FLSA's tip-credit provision.  Plaintiff alleges that all three of those requirements violate the tip-credit provision.  *See* 29 U.S.C. § 203(m).

## PROCEDURAL HISTORY

Defendant filed its motion to dismiss on May 31, 2017.  Plaintiff responded on June 14, and Defendant replied on August 31.  Plaintiff filed her motion for conditional certification on June 2.  Defendant responded on June 30, and Plaintiff replied on July 7.  Accordingly, these matters are now ripe for consideration.

### *Defendant's Motion to Dismiss*

Defendant moves to dismiss count one of Plaintiff's complaint on the grounds that Plaintiff has failed to allege that she earned less than minimum wage during a particular workweek, that the twenty-percent rule does not support a cause of action, and that Plaintiff's allegations do not violate the FLSA's dual-jobs regulation.  The Court will address each argument in turn.

## LEGAL STANDARD

A motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint."  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").  To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court articulated a "two-pronged approach" to test the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, the complaint must "contain factual allegations in addition to legal conclusions." *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 288 (4th Cir. 2012). Under Rule 8's pleading standard, "a formulaic recitation of the elements of a cause of action will not do," *id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), and "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the complaint must demonstrate that the plaintiff's right to relief is more than a mere possibility, but it need not rise to the level of evincing a probability of success. *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When ruling on a Rule 12(b)(6) motion to dismiss, the trial judge must accept as true all of the facts alleged in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiff. *E.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). The court must determine whether the allegations give rise to a plausible right to relief, *Iqbal*, 556 U.S. at 679; however, it should "not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments,'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC*

*v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Thus, although the court must accept a plaintiff's well-pleaded factual allegations as true for purposes of ruling on the motion, the complaint must nevertheless satisfy the "two-pronged" test articulated by the Supreme Court. *Iqbal*, 556 U.S. at 679.

## **ANALYSIS**

Defendant first argues that Plaintiff's failure to allege that she earned less than minimum wage in any particular workweek is fatal to count one of her complaint. Citing this Court's decision in *Schmidt v. Charleston Collision Holdings, LLC*, Defendant argues that so long as Plaintiff's average wage per hour worked during the workweek is above minimum wage, there is no violation of the FLSA. No. 2:14-cv-1094-PMD, 2014 WL 10102245, at \*3 (D.S.C. July 14, 2014).[1] Utilizing the FLSA's tip credit provision, § 203(m), Defendant paid Plaintiff a direct wage of $2.13 an hour and then applied Plaintiff's tips to cover the gap between the $2.13 direct wage and the $7.25 federal minimum wage. According to Defendant, so long as Plaintiff's average wage per hour, including her tips, was above minimum wage over the course of the workweek, then Defendant could not have violated the FLSA. Defendant's argument derives from the Second Circuit's decision in *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1961), where that court held that an employer had not violated the FLSA because their average hourly wage over the course of a workweek exceeded minimum wage. *Id.* at 490. Thus, Defendant asserts that count one should be dismissed.

Plaintiff disagrees, relying primarily on *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281 (10th Cir. 2017). In *Romero*, the Tenth Circuit addressed this question and concluded that "an

---

1.     The Court notes that its decision in *Schmidt* did not involve the FLSA's tip-credit provision.

employer doesn't comply with its federal minimum wage obligations just because its employees receive at least $7.25 in tips.  Instead, an employer complies with its minimum-wage obligations if it 'pays' its employees at least $7.25 an hour in 'wages.'"  *Id.* at 1282.  "[W]hile an employer can treat tips as wages under certain circumstances," *id.*, Plaintiff claims that Defendant impermissibly did so here.  In other words, Plaintiff claims that when she was performing non-tipped side work, she did not qualify as a tipped employee under § 203(m) of the FLSA and was entitled to be paid the full minimum wage of $7.25 an hour for the hours she spent performing non-tipped side work.  Thus, Plaintiff claims that even if her total direct wages and tips for the week averaged to greater than minimum wage, Defendant was still not entitled to pay her the $2.13 tip-credit wage when she was performing non-tipped side work.  Plaintiff's claim for non-tipped related side work is based on the FOH's twenty-percent rule,[2] while her claim for non-tipped unrelated side work is based on the dual-jobs regulation.[3]  The FLSA treats the related and unrelated non-tipped side work differently, but the majority of courts, including this Court, have concluded that a plaintiff can allege an FLSA cause of action based on both types of non-tipped tasks.  *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 733 (D.S.C. 2015).  The FOH provides the basis for Plaintiff's cause of action based on her performance of non-tipped side work that was related to her tipped occupation.  According to the FOH, an employer violates the

---

2.    Section 30d00(e) of the Department of Labor's FOH "'provides that if a tipped employee spends a substantial amount of time (defined as more than 20 percent) performing related but nontipped work, . . . then the employer may not take the tip credit for the amount of time the employee spends performing those duties.'"  *Romero*, 849 F.3d at 1284 (quoting *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 875 (8th Cir. 2011)).  Here, Plaintiff claims that servers and bartenders were entitled to full minimum wage for the time they spent performing non-tipped job duties that were related to their tipped job but occupied more than twenty percent of their time.

3.    The Department of Labor has stated "'that an employee may hold more than one job for the same employer, one which generates tips and one which does not, and the employee is entitled to the full minimum wage rate while performing the job that does not generate tips.'"  *Romero*, 849 F.3d at 1284 (quoting *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011)).  Here, Plaintiff claims that servers and bartenders were entitled to full minimum wage when performing job duties that were unrelated to their tipped job.

FLSA if it requires its tipped employees to spend more than twenty percent of their time performing non-tipped side work that is related to their tipped occupation.

Defendant recently provided the Court with notice of the Ninth Circuit's recent decision in *Marsh v. J. Alexander's LLC*, 869 F.3d 1108 (9th Cir. 2017). *Marsh* largely supports Defendant's arguments related to the tip-credit provision as it applies in this case. In *Marsh*, the Ninth Circuit concluded that the Department of Labor's Wage and Hour Division's Field Operations Handbook ("FOH") was not entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997), "because the FOH § 30d00(f) is both inconsistent with the regulation[4] . . . and attempts to 'create de facto a new regulation.'" 869 F.3d at 1121 (quoting *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)).

The Court respectfully declines to follow *Marsh* and instead adopts the majority approach endorsed in *Irvine*, *Romero*, and *Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011). The Court takes this view for a number of reasons. First, the Tenth Circuit correctly notes that *Klinghoffer* was decided before the FLSA's tip-credit provision existed. *Romero*, 849 F. 3d at 1285. Thus, Defendant's *Klinghoffer*-derived argument has very little weight. Second, Defendant's argument runs counter to the FLSA's plain requirement that an employer pay its employees a direct wage in addition to their tips. *See id.* As discussed in *Romero*, if the Court were to accept Defendant's argument then employers would not need to pay an employee anything "so long as the employee's weekly tips—when divided by the number of hours he or she worked— average at least $7.25 an hour." *Id.* The Court cannot accept Defendant's argument because § 203(m) of the FLSA "explicitly requires employers to pay their tipped employees *something*, regardless of how much those employees receive in tips." *Id.*; *see also* 29 U.S.C. § 203(m) ("[T]he cash wage paid such employee . . . shall be not less than [$2.13 an hour.]"). Finally, although not

---

4.    The relevant regulation is the FLSA's dual-jobs regulation. *See* 29 C.F.R. § 531.56(e).

entitled to any special deference, the Department of Labor submitted an amicus brief in *Romero* supporting the plaintiff's position that *Klinghoffer* had no applicability in the tip-credit context. All of these factors weigh heavily in Plaintiff's favor.  The Court concludes that Plaintiff can state a cause of action against Defendant even if her average wage per hour was above minimum wage, so long as she can sufficiently allege that Defendant improperly paid her using the tip-credit provision for the hours she spent performing related or unrelated non-tipped side work.  She has done so here.

Plaintiff alleges that Defendant required tipped workers to "spend a substantial amount of time performing non-tip producing work including, but not limited to, general cleaning of the restaurant, rinsing, washing, and rolling silverware, and making sauces and refilling condiments." (Am. Compl., ECF No. 10, at ¶33.)  Plaintiff also alleges that "Defendant requires tipped workers to perform non-tipped work before the restaurant is open or after the restaurant has closed and customers have left."  (*Id.* at ¶35.)  "For instance, Defendant typically requires tipped workers to arrive at least an hour prior to serving their first customer and to stay at work approximately one and a half to two or more hours after serving their last customer."  (*Id.* at ¶36.)  Plaintiff then provided further examples of non-tipped work she and the putative class members were required to perform.  Those examples include:

> (1) sweeping floors; (2) taking out trash and cleaning trash receptacle areas; (3) restocking to-go boxes and other items; (4) filling bottles and pans with dressings and labeling them; (5) cleaning tables, chairs, and booths; (6) cleaning baseboards and lamps; (7) scrubbing walls and drains; (8) making sauces following restaurant recipes; (9) cleaning out the keg room; (10) cleaning and restocking caddies; (11) rinsing dirty silverware and running it through the dishwasher; (12) polishing and rolling silverware; (13) removing and replacing rechargeable batteries from tabletop customer computers; (14) prepping and garnishing food and desserts before serving to customers; (15) deep cleaning light fixtures, booths, and woodwork with Murphy's Oil; (16) restocking mini fridges with sour cream, cheese, dressing, etc.; (17) scrubbing floors in restaurant with a deck brush; and (18) breaking down and cleaning the tea/coffee and soda stations.

(*Id.* at ¶42.)   Finally, Plaintiff alleges that "[t]he non-tipped work which Plaintiff and others similarly situated were required to perform exceeded twenty percent (20%) of their time at work." (*Id.* at ¶44.)

This Court has previously rejected Defendant's arguments regarding the viability of causes of action based on the FOH's twenty-percent rule and the dual-jobs regulation. *See Irvine*, 106 F. Supp. 3d at 735.  Defendant correctly notes that this Court did not preclude the *Irvine* defendants from making further arguments about the twenty-percent rule's applicability to the facts of that case at a later stage of the litigation. *Id.* at 736.  However, this Court determined that the plaintiff in that case had stated an FLSA claim under both the twenty-percent rule and the dual-jobs regulation. *Id.*  The Court sees no reason to depart from that holding here, and viewing Plaintiff's allegations in the light most favorable to her, she has stated a cause of action under both the twenty-percent rule and the dual-jobs regulation.   To the extent Defendant wishes to make further arguments about the twenty-percent rule's applicability, it may do so at the appropriate time. Accordingly, Defendant's motion to dismiss is denied.

*Plaintiff's Motion for Conditional Certification*

**LEGAL STANDARD**

Under the FLSA, employees may institute a collective action against their employer on behalf of themselves and similarly situated employees.  The FLSA's collective action provision states that:

> [a]n action to recover [unpaid overtime compensation] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

8

29 U.S.C. § 216(b).  The mechanism outlined in § 216(b) is designed to facilitate the efficient

adjudication of similar claims by "similarly situated" employees, permitting the consolidation of

individual claims and the pooling of resources in prosecuting such actions against their employers.

*See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *LaFleur v. Dollar Tree Stores,*

*Inc.*, 30 F. Supp. 3d 463, 467 (E.D. Va. 2014), *reconsideration denied*, 2014 WL 2121563 (E.D.

Va. May 20, 2014), *and motion to certify appeal denied*, 2014 WL 2121721 (E.D. Va. May 20,

2014); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).  In deciding

whether the named plaintiffs in an FLSA action are "similarly situated" to other potential plaintiffs,

courts generally employ a two-stage approach.[5]  *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp.

2d 544, 547 (E.D. Va. 2009) (quoting *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159,

1164 (D. Minn. 2007)); *see also Regan v. City of Charleston*, No. 2:13-cv-03046-PMD, 2014 WL

3530135, at *2 (D.S.C. July 16, 2014); *Pelczynski v. Orange Lake Country Club, Inc.*, 284 F.R.D.

364, 367 (D.S.C. 2012); *Simons v. Pryor's, Inc.*, No. 3:11-cv-0792-CMC, 2011 WL 6012484, at

*1 (D.S.C. Nov. 30, 2011); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-cv-03088-DCN, 2011 WL

2981466, at *2 (D.S.C. July 22, 2011).

The first step in this process, which is the subject of the instant Motion, is the "notice," or

"conditional certification," stage.  *Purdham*, 629 F. Supp. 2d at 547.  Here, "a plaintiff seeks

conditional certification by the district court in order to provide notice to similarly situated

plaintiffs" so that they can "opt-in" to the collective action.  *Pelczynski*, 284 F.R.D. at 367–68.

---

5.    Although the Fourth Circuit has not yet enunciated a test for conditional certification of collective actions, district courts in the Fourth Circuit, including this Court, typically follow the two-stage, or two-step, approach when deciding whether named plaintiffs are similarly situated to potential plaintiffs. *E.g.*, *LaFleur*, 30 F. Supp. 3d at 467 ("District courts within . . . the Fourth Circuit . . . have uniformly employed a two-step inquiry in deciding whether to certify a collective action under the FLSA . . . ."); *Curtis v. Time Warner Entm't*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *2 (D.S.C. May 3, 2013) ("Although the Fourth Circuit has not directly addressed the appropriate standard for certifying a collective action under § 216(b), district courts in this circuit, including this court, follow the [two-stage] process . . . .").

With regard to this notice phase, "[t]he Supreme Court has held that, in order to expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" *Purdham*, 629 F. Supp. 2d at 547 (quoting *Hoffman-La Roche, Inc.*, 493 U.S. at 169). At this stage, the court reviews the pleadings and affidavits to determine whether the plaintiff has carried his burden of showing that he is similarly situated to the other putative class members. *Pelczynski*, 284 F.R.D. at 368; *Purdham*, 629 F. Supp. 2d at 547–48. "Because the court has minimal evidence, this determination is made using a fairly lenient standard." *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *1 (D.S.C. Apr. 7, 2011). Plaintiffs must make only "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law," *Purdham*, 629 F. Supp. 2d at 548. If the court determines that the proposed class members are similarly situated, the court conditionally certifies the class. *Steinberg*, 2011 WL 1335191, at *1. The putative class members are then notified and afforded the opportunity to "opt-in," and the case proceeds as a representative action throughout discovery. *Id.* (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citing § 216(b))).

Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, "a defendant may then move

10

to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski*, 284 F.R.D. at 368. At this optional "decertification stage," the court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg*, 2011 WL 1335191, at \*2; *see Pelczynski*, 284 F.R.D. at 368. "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at \*3 (internal quotation marks omitted). If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss the opt-in plaintiffs' claims without prejudice, and permit the named plaintiffs to proceed on their individual claims. *Id.*

## ANALYSIS

Plaintiff requests that the Court enter an order: (1) conditionally certifying a class of all Smokey Bones servers and bartenders from January 24, 2014 to present; (2) requiring Defendant to produce the names, dates of employment, cell phone numbers, home phone numbers, e-mail addresses, last known home addresses, and the last four digits of the putative class members' social security numbers in an Excel spreadsheet within fourteen days; (3) authorizing the mailing, e-mailing, and posting of the proposed notice and consent forms to putative class members; (4) authorizing a follow-up e-mail notice reminder to the putative class members who did not respond after thirty days; and (5) setting the opt-in period as ninety days. The Court will address each request in turn, along with Defendant's request to meet and confer with Plaintiff's counsel regarding the terms of the proposed notice.

### I.        Conditional Certification

Plaintiff moves to conditionally certify a nationwide class of servers and bartenders who worked at any of the sixty-seven Smokey Bones locations across the country.  Defendant objects to the conditional certification of the proposed class, as well as to the breadth of the proposed class in the event that a class is conditionally certified.

Plaintiff argues that the proposed class is similarly situated because they were all subject to the same policies and duties.  According to Plaintiff, Smokey Bones is not a franchise and it maintains uniform policies across each of its sixty-seven restaurants.  As support for this assertion, Plaintiff points to the corporate nationwide job descriptions for servers and bartenders.  In those job descriptions, Smokey Bones lays out the job duties for its server and bartender positions nationwide.  Those job duties include descriptions of the side work that servers and bartenders are expected to perform.  (*See* Am. Decl. Kevin Journiette, Ex. B, Smokey Bones Corp. Job Description Server Positions, ECF No. 39-1, at 12–13; Pl.'s Mot. Certify Class, Ex. D, Decl. Victoria Reaves, ECF No. 33-5, at 12–13.)  Plaintiff asserts that those nationwide job descriptions, coupled with the declarations she has submitted from servers and bartenders at three different Smokey Bones restaurants in three different states, are more than enough to demonstrate that all Smokey Bones servers and bartenders are sufficiently similarly situated to surmount the low bar of conditional certification.

Defendant disagrees, and argues that conditional certification of this action is neither warranted nor prudent.  Defendant's primary argument against conditional certification is the same as the argument it made in its motion to dismiss—that Plaintiff cannot allege a violation of the FLSA because Plaintiff never made less than minimum wage over the course of any workweek.  Because the Court has already addressed that argument above, it does not rehash it here.  However,

Defendant also argues that the declarations of a smattering of employees from three Smokey Bones locations are insufficient to justify conditional certification of a nationwide class of servers and bartenders. Moreover, Defendant argues that a nationwide class would be untenable as a result of the individualized inquiries that Defendant contends will be necessary.

The Court concludes that conditional certification of a nationwide class of servers and bartenders is warranted in this case. Plaintiff has produced evidence of nationwide Smokey Bones job descriptions for servers and bartenders that on their face require side work. There is no doubt that requiring side work does not necessarily violate the FLSA. However, Plaintiff has made a sufficient showing that Smokey Bones' nationwide side work policy potentially caused FLSA violations for all Smokey Bones servers and bartenders. Plaintiff and the other opt-ins' declarations state that at least three Smokey Bones locations in three different states all implemented the side work discussed in the server and bartender descriptions in such a way as to require violations of the dual-jobs regulation and/or the FOH's twenty-percent rule. The Court recognizes that Defendant has produced declarations from a number of Smokey Bones employees at various other locations throughout the country that dispute Plaintiff's claims. However, the Court does not make credibility determinations at the conditional certification stage. *Curtis v. Time Warner Entertainment-Advance/Newhouse Partnership*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *6 (D.S.C. May 3, 2013). Instead, "it is sufficient that [Plaintiff has] shown a reasonable basis for [her] claim that other similarly situated plaintiffs exist." *Id.*

The Court also recognizes, and shares to some extent, Defendant's concern about the manageability of the proposed class and the possibility that individual determinations will predominate. Nonetheless, because Plaintiff has provided evidence of Defendant's corporate side work policy by way of the server and bartender job descriptions, the Court is skeptical that

13

individualized determinations will predominate after the class members are identified. Regardless, the answer to that question will be far clearer after discovery is complete. Accordingly, the Court conditionally certifies Plaintiff's proposed class of servers and bartenders as it pertains to violations of the dual-jobs regulation and the FOH's twenty-percent rule.[6]

## II.    Class Member Information

Plaintiff seeks the names, dates of employment, cell phone numbers, home phone numbers, e-mail addresses, last known home addresses, and the last four digits of the putative class members' social security numbers. Plaintiff requests that Defendant produce that information in an Excel spreadsheet within fourteen days of the date of this Order. District courts have taken conflicting positions and approaches as to what information regarding potential plaintiffs may or must be disclosed to named plaintiffs at the notice stage of FLSA actions.[7] Although email addresses are more routinely disclosed, district courts in this circuit have required a showing of a

---

6.    The Court declines to conditionally certify Plaintiff's other claims, namely Defendant's failure to notify the putative class members that it was paying them a reduced minimum wage pursuant to the tip-credit provision, Defendant's purported requirement that Plaintiff and the putative class members use their tips to reimburse the restaurant for customer walk-outs, and Defendant's purported requirement that Plaintiff and the putative class members pay for additional Smokey Bones t-shirts out of their tips. Unlike Plaintiff's side work claims, these other claims are individual to Plaintiff, and Plaintiff has not shown that those claims arose out of a corporate policy. Specifically, Plaintiff and the other declarants allege that they were not properly notified that Smokey Bones was using the tip-credit provision. Defendant has provided evidence that it hung Department of Labor posters in each of its locations, that it orally told Plaintiff and all other employees that they were being paid using the tip-credit provision, and that the tip-credit provision was explained in its employee handbook. Next, Plaintiff has alleged that she was required to compensate the restaurant when a customer walked out without paying. However, only Plaintiff makes such an allegation. Finally, Plaintiff alleges that she was required to pay for additional Smokey Bones t-shirts with her tips. Here, only two of the five employees who provided declarations stated that they themselves **actually purchased** additional Smokey Bones shirts with their tips. The Court concludes that each of these claims are insufficient to justify conditional certification of a nationwide class on those claims because Plaintiff has not shown that the other nationwide servers and bartenders are similarly situated. Accordingly, those claims must proceed on an individual basis.

7.    *Compare Velasquez v. Digital Page, Inc.*, No. 11-3892 LDW AKT, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) ("In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."), *with Amrhein v. Regency Mgmt. Servs., LLC*, No. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) ("Courts in this district hold that absent a showing by plaintiffs of a 'special need' for disclosure of class members' telephone numbers or other personal information, such as social security numbers or dates of birth, ordering such disclosure is inappropriate.").

"special need" before requiring the disclosure of telephone numbers. *See Ruiz v. Monterey of Lusby, Inc.*, No. DKC 13-3792, 2014 WL 1793786, at *3 n.1 (D. Md. May 5, 2014) (quoting *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011) ("Defendants will not . . . be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any 'special need' for the disclosure of this information."); *Amrhein*, 2014 WL 115356, at *10 (requiring a showing of a special need for disclosure of social security numbers). The Court concludes that Plaintiff has not shown a special need for the putative class members' telephone numbers or their social security numbers. Accordingly, Defendant need only produce the putative class members' names, dates of employment, e-mail addresses, and home addresses.

## III.    Additional Notice Parameters

As for the methods of notice, the timeline for opting-in, and the proposed follow-up e-mail, the Court grants Defendant's request to meet and confer. In order to allow this conference without prejudicing the potential opt-ins, the Court will equitably toll the statute of limitations until the terms of the notice are agreed upon. *See Cruz v. Maypa*, 773 F.3d 138 (4th Cir. 2014).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant's motion to dismiss is **DENIED**, and that Plaintiff's Motion for Conditional Certification is **GRANTED** subject to the restrictions discussed above.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**October 25, 2017**
**Charleston, South Carolina**

15